(December 18, 1986)

■ BURNS INTERNATIONAL SECURITY SERVICES, INC., Respondent, v INTERNATIONAL HOUSE et al., Appellants.—Order of the Supreme Court, New York County (Herman Cahn, J.), entered November 21, 1985, which granted plaintiff's motion for summary judgment and denied defendants' cross motion for summary judgment and for leave to amend their answer to assert a counterclaim, unanimously modified, on the law, solely to the extent of denying plaintiff's motion seeking indemnification as to $250,000 of the prior judgment entered in favor of Norina Moskowitz against plaintiff, granting defendants' cross motion for summary judgment to the extent of reducing the

indemnification by that amount, and otherwise affirmed, without costs or disbursements.

Judgment of the Supreme Court, New York County, entered December 3, 1985, upon the foregoing order, is modified, on the law, to reduce the sum of $1,115,228.10 awarded plaintiff by $250,000, and otherwise affirmed, without costs or disbursements.

Plaintiff Burns International Security Services, Inc. (Burns) was hired to provide security personnel for the International House, a residence for students. A former boyfriend of Norina Moskowitz, a resident, was allowed into the building and threw acid on her, causing serious injury. She brought an action against defendants and Burns. International and Massachusetts Institute of Technology (M.I.T.) settled with her during the trial, which resulted in a verdict in the amount of $10,300,000, finding plaintiff 32% contributorily negligent and apportioning liability at 28% against Burns, 42% against M.I.T. and 30% against International. On appeal, this amount was reduced and after further leave to appeal had been denied, Burns paid Ms. Moskowitz $1,115,228 in satisfaction of the judgment, and commenced this action for indemnification from defendants.

Special Term granted plaintiff summary judgment on its claim for full contractual indemnification, finding that the clause imposing partial liability on the part of Burns did not apply under the facts herein. We agree with the nisi prius court that there was an agreement by defendants to indemnify Burns but we also find that Burns was subject to a partial liability of $250,000 under that agreement, and we modify accordingly.

The indemnification clause in the contract between Burns and International House provided, *inter alia:* "The services provided under this Agreement are solely for the benefit of the Client [International House] and neither this Agreement nor any service rendered hereunder shall give rise to or shall be deemed to or construed so as to confer any right on any other party as a third party beneficiary or otherwise *and Client agrees to indemnify Burns against any claims by such third parties*" (emphasis added).

Although plaintiff purported to immunize itself from liability to third parties such as Moskowitz, it also protected itself further by the clause granting it indemnification by International House against any such third-party claims. The cited provision, when read within the context of the entire agree-

ment, clearly provides for indemnification by International House for "any claims" brought against Burns by third parties. The plain meaning of these words fairly includes liability for active negligence on the part of Burns and shows the intent of the parties. (*See, Levine v Shell Oil Co.*, 28 NY2d 205, 212.)

The succeeding portion of the limitation of liability provision reads in pertinent part:

"Client agrees to indemnify Burns against any claims by such third parties. Burns shall be liable only for personal injury or property damage resulting directly from the negligent performance of the services rendered under this Agreement with the following limits * * *

"(b) Personal injury (which includes false arrest, detention or imprisonment, malicious prosecution, libel, slander, defamation of character or violation of right of privacy) with a limit of $250,000 per person and $500,000 per occurrence.

"(c) Property damage with a limit of $250,000 per occurrence.

"(d) Bodily injury resulting solely from the operation of vehicles owned and/or leased by Burns * * * with a limit of $250,000 per person and $500,000 per occurrence * * *

"Burns liability for the intentional acts of its employees or agents shall be limited to a maximum of $50,000 per occurrence."

Instead of creating an independent obligation on the part of Burns to International or creating any ambiguity as to International's obligation to indemnify, as claimed by defendants, this part of the clause clearly sets forth exceptions to the full indemnification Burns would otherwise obtain pursuant to the preceding provision. However, Special Term erred in finding that the $250,000 personal injury exception to defendants' obligation to indemnify Burns did not apply to the Moskowitz judgment. Thus, section (b) notes the limit of $250,000 on Burns's liability for "[p]ersonal injury (which includes false arrest, detention or imprisonment * * *)". While this could have more clearly been stated "which includes, without limitation", Burns drafted this provision and it must, therefore, be most strongly construed against it and favorably to International House. (*67 Wall St. Co. v Franklin Natl. Bank*, 37 NY2d 245, 249.)

In any event, the plain and ordinary meaning of "personal injury" clearly embraces the bodily injury done to Moskowitz. Special Term's reliance on section (d), concerning "[b]odily

injury resulting solely from the operation of vehicles owned and/or leased by Burns", to establish that the term "personal injury" did not include bodily injury, is misplaced. This provision is simply a specific one, addressing bodily injury where motor vehicles are involved, as controlling over the general personal injury provision.

Finally, the penultimate sentence of the provision, which reads: "[a]nything herein to the contrary notwithstanding, Burns liability for the intentional acts of its employees or agents shall be limited to a maximum of $50,000 per occurrence", clearly shows that the term "personal injury" must apply to other claims besides such intentional torts. Otherwise, section (b) would in effect be rendered meaningless. "Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant." (Matter of Buechner, 226 NY 440, 443.)

Although the meaning of the term "personal injury" as asserted by Burns may be consistent with the usage in standard general liability policies of insurance, those policies explicitly define "personal injury" as being limited to intentional torts, which was not done by plaintiff in the agreement before us. Concur—Murphy, P. J., Sullivan, Asch and Wallach, JJ.