■ RHONDA PHALEN et al., as Administrators of the Estate of ANTHONY V. MINCOLLA, Deceased, Respondents, v VINEYARD L.V., INC., Appellant. [683 NYS2d 615] —Spain, J. Appeal from a judgment of the Supreme Court (Rose, J.), entered October 3, 1997 in Broome County, upon a decision of the court in favor of plaintiffs.

In 1975 Anthony V. Mincolla (hereinafter decedent) entered into an agreement with Guido Iacovelli and Costas Zades to form defendant for the purposes of starting and operating a restaurant in Las Vegas, Nevada. Iacovelli and Zades were each 50% shareholders in Pavillion Catering Corporation (hereinafter Pavillion) and pursuant to an agreement with decedent, decedent was a one-third owner of defendant and Pavillion was a two-thirds owner. In 1976 defendant purchased three split-dollar life insurance policies covering the lives of decedent, Iacovelli and Zades. Beneficiaries were designated on each of the policies as follows: the part A beneficiary was defendant and the part B beneficiaries were the two people who were not the insured of that policy (e.g., on the policy covering decedent, Iacovelli and Zades were the part B beneficiaries). Each policy had a total of $75,000 coverage and the split-dollar arrangement was that the amount that had been paid in premiums would be paid to the part A beneficiary and the remainder of the coverage would be paid to the part B beneficiaries.

In June 1976 decedent, Iacovelli and Zades entered into an agreement which included a clause stating that in the event that any of the three principals in defendant died, defendant would collect the proceeds from the insurance policy and redeem the deceased principal's stock. The principals entered into another agreement in July 1984 wherein they agreed to amend the earlier agreement in that the redemption would only apply upon the death of decedent, and not Iacovelli or Zades. That agreement stated that in the event of decedent's death, and only decedent's death, defendant would collect the insurance proceeds and use the proceeds to redeem decedent's stock.

On March 2, 1992 decedent died. The proceeds under the in-

surance policy covering decedent totaled approximately $78,000; $24,104 was owed to the insurance company to repay loans taken by defendant against the policy; $14,692 was paid to Iacovelli and Zades each as part B beneficiaries; and $25,132 was paid to defendant as part A beneficiary. On May 29, 1992 the checks paid to Iacovelli and Zades were deposited by them into defendant's bank account, along with the check made payable to defendant; however, defendant did not pay any moneys to decedent's estate.

Plaintiffs, as representatives of decedent's estate, commenced this action against defendant, Pavillion, Iacovelli and Zades seeking, *inter alia*, the moneys that were paid on the insurance policy and decedent's accrued and unpaid salary.* Defendant argued that it was only obligated to pay decedent's estate that portion of the insurance policy that was paid to defendant, as the part A beneficiary, and not the proceeds paid to Iacovelli and Zades. Defendant contended that when the proceeds paid to defendant were offset by the amount decedent owed to defendant in loans, decedent still owed defendant money. After issue was joined and discovery was completed a bench trial was held. Following trial, Supreme Court rendered a decision in favor of plaintiffs in the amount of $32,156, plus interest, costs and disbursements. The award represented the life insurance proceeds ($54,518) plus decedent's accrued salary ($25,835), less outstanding loans owed by decedent to defendant in the amount of $48,196. Defendant appeals.

Initially, we reject defendant's contention that Supreme Court improperly permitted plaintiffs to offer testimony that contemporaneously altered the terms of the life insurance contract. More specifically, defendant contends that the court should not have allowed the testimony of Guy Luciano, the life insurance agent who sold defendant the life insurance policies, regarding the parties' purpose and intention in buying the policies. Notably, defendant did not object to Luciano's testimony nor did it move to have it stricken (*see, Barber v Young*, 238 AD2d 822, *lv denied* 90 NY2d 808). Consequently, defendant has not preserved this issue for review.

In any event, defendant's argument is without merit. It is well-settled law that "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (*W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162; *see, 67 Wall St. Co. v Franklin Natl. Bank*, 37 NY2d 245, 248). Upon our

* In January 1994 the action was dismissed against Pavillion, Iacovelli and Zades.

review of the record we conclude that Luciano's testimony did not vary the insurance policy. Luciano stated that he discussed with decedent, Iacovelli and Zades setting up the insurance policies and that their purpose of doing so was to enable defendant to buy the deceased principal's stocks with the policies' proceeds. Luciano understood that although the money would be paid to Iacovelli and Zades as the part B beneficiaries, the money would then be paid back to defendant so that it could purchase decedent's stock. Luciano's testimony merely explained the purpose of the policy and the intent of the principals in purchasing the policy in relation to two collateral agreements, namely, the 1976 and 1984 buy-out agreements between Pavillion and decedent. As such, we conclude that Luciano's testimony was permissible parol evidence (*see*, 58 NY Jur 2d, Evidence and Witnesses, § 605).

We also reject defendant's contentions that Supreme Court misinterpreted the 1976 and 1984 agreements and that Iacovelli and Zades never accepted responsibility for defendant's obligation to pay decedent's estate pursuant to these agreements and the only money that could be therefore paid to decedent pursuant to the agreements was the proceeds which defendent collected as the part A beneficiary. Here, while Iacovelli and Zades signed the agreements in their capacity as officers in Pavillion, they clearly were aware of the preexisting insurance policy that named them beneficiaries. The 1984 agreement stated that in the event of decedent's death, defendant would collect the proceeds of the life insurance policy "and shall forthwith redeem [decedent's] stock" in exchange for the amount of such insurance proceeds. Proceeds was defined as the amount "payable to the beneficiary of such insurance"; "beneficiary" was not limited to defendant. Furthermore, it is important to note that contrary to defendant's assertions, Supreme Court did not assert that Iacovelli and Zades had a duty to turn over the insurance proceeds they received as beneficiaries to defendant. Rather, Iacovelli and Zades, by their own decision, turned over this money to defendant by depositing both checks from the insurance company, together with the check to defendant, into a bank account belonging to defendant. Thereafter, the total amount deposited ($54,493.31), which represented the total amount paid in insurance proceeds for the policy on decedent, was claimed as defendant's asset. The record supports the conclusion that Iacovelli and Zades surrendered these proceeds to defendant in accordance with the 1984 agreement's clause which states that defendant would collect all proceeds of the policy for payment to decedent's estate to redeem his stock. Therefore, in our view, Supreme

Court did not misinterpret the 1976 and 1984 agreements or misapply an obligation owed by defendant upon Iacovelli and Zades.

Finally, we reject defendant's contention that Supreme Court erred by granting plaintiffs' motion *in limine* to preclude defendant from presenting evidence about a theory of defense as to plaintiffs' claim for recovery of decedent's accrued unpaid salary. The record reveals that on the eve of trial, defendant contacted plaintiffs and expressed its intention to raise the defense that decedent's accrued and unpaid salary, which plaintiffs were seeking, had not really accrued but had only accrued on the books and was not really due and owing. Defendant wanted to present evidence, through the testimony of its accountant that despite the fact that the books showed a salary had been owing to decedent, there was no salary actually owing. Plaintiffs' motion to have this evidence precluded because it represented a change in the theory of the defense was thereafter granted. Notably, defendant did not specifically seek leave to amend its answer or bills of particular to include this change in its theory of defense; consequently, plaintiffs had no opportunity to prepare a response to this surprise theory. Accordingly, we conclude that Supreme Court's decision to strike the evidence was not an improvident exercise of its discretion (*see generally*, *Caster v Increda-Meal*, 238 AD2d 917; *Vega v Lenox Hill Hosp.*, 235 AD2d 302; *Mawardi v New York Prop. Ins. Underwriting Assn.*, 183 AD2d 758).

Mercure, J. P., White, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed, with costs.